## OPINION ON THE CURRENCY.

OPINION OF THE JUSTICES OF THE SUPREME COURT TO THE GOVERNMENT, UNDER ARTICLE 70 OF THE CONSTITUTION, ON THE ACT TO REGULATE THE CURRENCY.

### DECEMBER, 1884.

### JUDD, C. J.; McCULLY and AUSTIN, JJ.

The Minister of Finance may substitute United States gold coin for Hawaiian silver, under Chap. VIII., Laws of 1884.

### LETTER FROM THE ATTORNEY-GENERAL.

*To the Hons. A. F. Judd, B. H. Austin and L. McCully, Chief Justice and Associate Justices of the Supreme Court:*

On behalf of the Government, I respectfully submit to you the question herein following, and beg that you will favor me with your opinion on the point.

The fourth section of Chapter VIII. of the Session Laws of 1884 reads as follows :

" Whenever it shall appear that there is such an excess of silver coins in circulation as disturbs the equilibrium between gold and silver coins, under the provisions of this Act, the Minister of Finance, in order to restore such equilibrium, shall replace sufficient silver coin from any silver coin which may be in the Treasury, either as Government realization or on deposit on account of any silver certificates, with gold coins of the United States, in the same manner as hereinafter provided in Sections 5, 6 and 7 of this Act."

Under Section 5 of the same Act, the Minister of Finance is authorized to substitute gold coin for all silver coin, *except Hawaiian silver coin.*

Does the last sentence in Section 4, wherein the Minister is directed to carry out the provisions in the same manner as is provided in Section 5, forbid or permit the substitution of United States gold coin for Hawaiian silver ?

I have the honor to be your obedient servant,

PAUL NEUMANN, Attorney-General.

Honolulu, December 10, 1884.

JUDICIARY DEPARTMENT,
HONOLULU, December 11, 1884.

*To His Excellency Paul Neumann, Attorney-General:*

SIR: The Justices of the Supreme Court had the honor yesterday to receive from you a communication wherein our opinion is asked on a question arising upon the "Act to regulate the Currency," passed by the Legislature of 1884.

Assuming that the request emanates from His Majesty's Cabinet, we proceed to answer the question stated, which is, in short, whether the fourth Section of the Act is in conflict with Section 5, or as you have stated it, "Does the last sentence in Section 4, wherein the Minister is directed to carry out the provisions in the same manner as is provided in Section 5, forbid or permit the substitution of United States gold coin for Hawaiian silver?"

In order to understand and properly solve the question presented, the nature of the money in circulation in this Kingdom at the time the Act was passed must be understood. It consisted of silver coins of Mexico, France, the United States, and of many other nations, as well as of a large amount of Hawaiian silver coin recently introduced.

Looking at the Act as a whole, the design of the law is apparent. It was to make United States gold the circulating medium of this country.

Section 1 prescribes that United States gold coin shall be the standard and legal tender for the payment of all debts in this Kingdom.

Section 2 allows the silver coin of the United States and of the Hawaiian Kingdom to be legal tender for any amount not exceeding ten dollars in any one payment.

By Section 3 *all other* gold and silver coins are receivable at the Government Treasury in payment of Government dues, duties and taxes at a rate not exceeding their bullion value, and could be disposed of at a discount by persons holding them and having dues to pay to the Government.

The next five Sections of the Act provide for two methods by which the silver in circulation was to be reduced in volume and replaced with United States gold.

In the first place, by force of the first part of Section 5, imme-

diately on the approval of this Act—that is, from and after the 17th day of July, before the 1st of December, the time when the Act in other respects went into effect—the Minister of Finance was required to exchange, during sixty days after a notice to this purport, silver coins of all nationalities excepting those of the United States and of Hawaii, for Hawaiian coin, dollar for dollar. If the entire public had availed itself of this provision, it is apparent that all the heterogeneous silver in circulation would have flowed into the Treasury, and no silver coins remained in circulation but those of the United States and of Hawaii. This action was required to be taken immediately on the passage of the Act.

The last part of Section 5 requires the Minister of Finance to arrange for the sale of the heterogeneous silver thus received and all silver coins then in the Treasury, except Hawaiian coins, and the delivery of their proceeds into the Treasury—gold coins of the United States.

Section 6 makes further provision to enable persons, whose tenders for the purchase of the silver coins mentioned in Section 5 were accepted, to deposit bonds as security for the delivery of the gold proceeds of the sale. Section 7 enacts that the loss incident to the conversion of silver into gold shall be borne by the Treasury.

Now, Section 4, although appearing in the Act earlier than Sections 5 and 6, would become operative after the act of calling in the heterogeneous silver had been accomplished, and might naturally have come later in the Act than Sections 5 and 6. But we presume it was placed thus early in the Act, as it has a permanent force and effect. It reads as follows:

"Whenever it shall appear that there is such an excess of silver coins in circulation as disturbs the equilibrium between gold and silver coins under the provisions of this Act, the Minister of Finance, in order to restore such equilibrium, shall replace sufficient silver coin from any silver coin which may be in the Treasury, as Government realization or on deposit on account of any silver certificates, with gold coins of the United States in the same manner as hereafter provided in Sections 5, 6 and 7 of this Act."

To state it more fully: Whenever (that is, at any time in the future) it shall appear that there is such an excess of silver coin in

circulation (that is, in general circulation in the community) as disturbs the equilibrium between gold and silver coins under the provisions of this Act (that is, whenever there is more silver in circulation than will suffice for the payment of debts of ten dollars or less in amount), the Minister of Finance is required to replace silver coin in the Treasury sufficient in amount to restore the equilibrium, (whether this silver coin lies in the Treasury as the general funds of the Government or is there on deposit to meet silver certificates) with gold coin of the United States. The Act also says that the method in effecting this is to be that prescribed in Sections 5, 6 and 7 of the Act. That is to say, the Minister of Finance must arrange through advertisements for tenders for the sale of this silver coin in lots of not more than $50,000 each. It is to be noticed that Sec. 4 confers a power to replace silver coins with gold coins, which is to be invoked at any time in the future, and as often as the contingency of a redundancy of silver in circulation shall arise.

It is also plain that by the terms of this section the nature or nationality of the silver coin which must be replaced with gold is not specified.

The section speaks of it as "any silver coin," also as "coin on deposit on account of any silver certificates," and Hawaiian silver coins are not excepted from the operation of the authority to convert. In reason there could be no distinction made, the evil to be remedied being an excess of silver coin.

In order to avoid in this section a repetition of the manner in which this replacing of silver with gold is to be done, the Act says briefly that the Minister shall conduct this replacement "in the same manner as hereinafter provided in Sections 5, 6 and 7 of this Act." But as we have above suggested, this requires merely that the *modus operandi* shall be the same as that pursued in replacing the silver required to be replaced by Sec. 5, and does not require that the subject matter—*i. e.*, the silver coins—upon which this method of exchange is to be pursued shall be identical with that mentioned in Sec. 6.

We find no contradiction in these sections and are of the opinion that Sec. 4 of the Act permits the Minister of Finance to substitute United States gold coin for Hawaiian silver coin, and

requires him to do so whenever the contingency of an excess of silver shall arise.

In examining the statute for the purpose of answering the question submitted by His Majesty's Government, we have observed a, possible danger in the conversion of Hawaiian silver into American gold. This coin for conversion into gold is worth only its bullion value. The intendment is that it shall be taken to San Francisco and melted. But we see nothing in the statute to prevent a purchaser of this coin at, say 80 per cent., from putting it into circulation here if he can obtain his gold otherwise to pay for it.

We trust that our sense of this danger will be considered a justification for going beyond the subject matter of the letter and offering a suggestion. It seems to us that the Minister of Finance should make the sales of coin under conditions which will effectually prevent such treatment of the coin sold.

We have the honor to be your obedient servants,

(Signed)              A. FRANCIS JUDD,
                      LAWRENCE MCCULLY,
                      BENJAMIN H. AUSTIN,
                 Justices of the Supreme Court.